Statement of the Case.
O’NIELL, J.
Plaintiff sued for $7,496.14 as the balance due for advances made on two contracts for the sale of lumber by defendant. Plaintiff also obtained a writ of attachment and seized certain personal property thereunder, on the allegations (1) that defendant was about to leave the state permanently, without there being a possibility, in the ordinary course of judicial proceedings, of obtaining or executing a judgment against him before his departure; (2) that defendant had mortgaged, assigned, or disposed of his property, or some part thereof, with intent to defraud his creditors, or to give an unfair preference to some of them; and (3) that defendant had converted or was about to convert his property into money, or evidences of debt, with intent to place it beyond the reach of his creditors.
Defendant filed a motion to dissolve the writ of attachment, but it appears that the motion was never tried. Thereafter he had the seizure released on bond.
He pleaded that the petition did not disclose a cause or right of action, because of plaintiff’s failure to allege a putting in default, or.a demand for the delivery of more lumber in compliance with the contracts. The plea or exception appears to have been disposed of by the judgment rendered on the merits of the case.
In answer to the suit, and by supplemental answer, defendant acknowledged having signed the contracts, but averred that he had delivered the quantity and grades of lumber sold and conveyed by the contracts. He averred that the difference between the quantity and quality of lumber actually delivered by him and the quantity and quality for which he was given credit by plaintiff was due to the fact that plaintiff had left the lumber so long in the stacks after receiving and before shipping it, that it had to be degraded and culled, to the extent of 15 per cent, of its original value. Defendant therefore prayed that the suit should be dismissed. In the alternative, and only in the event that the court should hold that he had guaranteed the quantity and grades of lumber to be delivered on cars, defendant prayed for judgment in reeonvention against pláintiff for damages for the loss that had resulted from plaintiff’s neglect or failure to ship *843 the lumber within the time stipulated in the contract, or within a reasonable time after it had been sawed and stacked on the yard as plaintiff’s property.
Defendant denied the allegations on which the writ of attachment was obtained, and prayed for its dissolution and for damages.
Plaintiff pleaded, as an exception to defendant’s alternative demand in reconvention, that defendant had no cause or right of action for the demand, because he had failed to allege a putting in default, by a demand that the lumber be shipped promptly.
The case was tried on the issues thus presented, and resulted in a judgment in favor of plaintiff for $2,577.14, with interest at 5 per cent, per annum from the date of the judgment. The writ of attachment was dissolved at plaintiff’s cost. The court found that the balance due according to the account exhibited by plaintiff was $7,383.89, but that it was subject to a further credit of $3,305.45 because of the deterioration in grades after the lumber had been delivered by defendant, and before it was shipped by plaintiff. The court also allowed defendant $1,500, including $500 for attorney’s fees, for damages incurred by the illegal attachment of his property.
Plaintiff has appealed from the judgment; and defendant, answering the appeal, prays that his exception of no cause of action be sustained, and that he have judgment as prayed for in his original and supplemental answer.
Opinion.
[1] Defendant’s answer to the appeal does not entitle him to an amendment of the judgment, or a reversal of any part that is unfavorable to him, because the answer was not filed in time. The case was assigned to be heard on the 12th of May, 1920, and the answer to the appeal was not filed 'Until that day. The case was not reached until the next day, and it was then, at^the request of defendant’s counsel, assigned to the next day, and was then argued.
Article S90 of the Code of Practice provides that, to entitle an appellee to a reversal of any part of the judgment against him, he must file his answer to the appeal at least three days before the date fixed for argument of the case.
Appellant’s counsel assign as errors of the district court (1) the dissolving of the writ of attachment and allowance of damages therefor; (2) the allowance of credit to defendant for deterioration in the grades of lumber; and (3) the -allowance of interest on the balance due appellant only from .the date of the judgment instead of the date of judicial demand.
[2] Our conclusion from the evidence is that the writ of attachment should not have been dissolved. Defendant had come from Arkansas to Louisiana, had bought a large tract of timber lánd in this state, and was engaged in converting the timber into lumber. About a month before this suit was filed, and after refusing to entertain or discuss any proposition of settlement of his account with the plaintiff, he sold to the West Virginia Timber Company, for $380,000, all of his property in Louisiana, except the lumber on hand, a stock of merchandise in his store or commissary, and a few articles of machinery, and he was under contract with the West Virginia Timber Company to dispose of this personal property within a reasonable time. He was disposing of the property as fast as he could, and had expressed his intention to return to Arkansas. In fact, he did return to Arkansas and resume his residence there a few months after this suit was filed. It is true he had money on deposit in two banks in Louisiana, but plaintiff was not aware of the fact, and the amount of both deposits was not sufficient to satisfy plaintiff’s claim. Plaintiff was therefore warranted in resorting. to the writ of attachment, by the first *845 paragraph of article 240 of the Code of Practice; i. e., because the debtor was about to leave the state permanently, without there being a possibility, in the ordinary course of judicial proceedings, of obtaining or executing a judgment against him before his departure.
[3] Appellant’s contention that defendant is not entitled to credit for the loss occasioned by the damages and consequent degrading of lumber, after it was sawed and stacked by defendant and before it was shipped by plaintiff, is founded upon the argument that defendant should have alleged in his answer to this suit, and should have proven on the trial, as a basis for his so-called demand in reconvention, that he had put plaintiff in default, by making demand for prompt shipment of the lumber. Defendant’s claim for the credit on the account rendered by plaintiff, however, is not primarily, or in reality, a reconventional demand. His claim is that he actually delivered to plaintiff the quahtity and grades of lumber that he had contracted to deliver, and that plaintiff only credited him with the quantity and grades subsequently shipped. The evidence shows — and there is no serious dispute of the fact — that plaintiff did leave the lumber exposed on the yard longer than it should have been so exposed, and that it was therefore damaged, by sun checks and stick rot, to the extent found by the district court. It was high-grade lumber, white oak and red oak, mostly quarter-sawed; which does not withstand exposure as long as does lumber that is used for building purposes. The lumber had been inspected, graded, and measured by a representative of the plaintiff company, and was, by the terms of the contract, plaintiff’s property; By the terms of the first contract, the lumber was to be shipped when dry and as ordered by plaintiff, and no stack or pile was to remain on defendant’s yard longer than five months. It is true, defendant was, by the terms of the contract, obligated to load the lumber on cars when ordered by plaintiff, and to make good any shortage in measurement or deficiency in grades. But that meant merely that he was responsible for any shortage in the measurement or deficiency in the grading that was done when he delivered the lumber, not for any damage or loss that resulted thereafter ; for the lumber was not at his risk after he had delivered it to plaintiff. It would therefore be unreasonable to hold that defendant, in order to avoid responsibility for any damage that might' result from plaintiff’s failure or neglect to order the lumber shipped within the time stipulated, or within a reasonable time, had to put plaintiff in default by demanding that the lumber be shipped.
[4] As plaintiff’s claim was due when this suit was filed, it bears interest from judicial demand. Article 1938 of the Civil Code declares that all debts shall bear interest at the rate of 6 per cent, per annum from the time they became due, unless it be otherwise stipulated.
The judgment in favor of plaintiff is amended, by increasing the amount to $4,077.-14, and by allowing interest thereon at 5 per cent, per annum from judicial demand; that is, from the 19th of February, 1913. It is ordered, adjudged, and decreed that the writ of attachment and the lien and privilege resulting from the seizure thereunder be reinstated and maintained, and that defendant pay all costs of this suit.